

| | Michael T.G. Long<br>Partner | 1251 Avenue of the Americas<br>New York, New York 10020 |
|---|---|---|
| | | **T**: 973 422 6726<br>**F**: 973 422 6727<br>**E**: mlong@lowenstein.com |

July 1, 2020

**VIA ECF**

Honorable Gregory H. Woods
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2260
New York, NY 10007

**Re:** *Wilmington Trust, National Association v. Hudson's Bay Company, et al.; Docket No. 1:20-cv-03830-GHW*

Dear Judge Woods:

In accordance with the Court's Notice of Pretrial Conference, counsel for Wilmington Trust, National Association, as Trustee (the "Trustee") in Trust for the benefit of the Holders (the "Certificateholders") of Hudson's Bay Simon JV Trust 2015-HBS (the "Trust"), Commercial Mortgage Pass-Through Certificates, Series 2015-HBS, by Situs Holdings, LLC, in its capacity as Special Servicer ("Situs" or the "Servicer"); the Trust as successor to JPMorgan Chase Bank, National Association, Column Financial Inc., and Bank of America, N.A. (the "Lender," and together with Servicer in its capacity as such and Trustee, collectively, "Plaintiff") and counsel for Hudson's Bay Company ULC (formerly known as Hudson's Bay Company, "HBC") and HBC L.P. ("HBC Bermuda," and, together with HBC, "Defendants"), submit this letter jointly in advance of the initial pretrial conference scheduled for July 8, 2020.

**(1) A brief statement of the nature of the case, the principal claims and defenses, and the major legal and factual issues that are most important to resolving the case, whether by trial, settlement or dispositive motion.**

*Plaintiff's Statement*

Plaintiff brings this action with regard to a series of corporate restructurings and asset transfers consummated by Defendants, without notice to or consent of Plaintiff as required under governing agreements, that stripped assets from and fundamentally changed the existence and enterprise position of Plaintiff's bargained-for, ultimate loan guarantor. Defendant HBC, formerly a well-financed, Canadian public company, is the contractual, absolute and unconditional ultimate guarantor of rent and other tenant obligations that secure an almost $850 million mortgage loan (the "Loan") to borrowers indirectly owned by HBC.



The borrowers consist of 34 special purpose entities, whose primary business is the ownership of one of the properties occupied and operated by an Operating Lessee as either a Lord & Taylor store or a Saks Fifth Avenue store. In conjunction with the Loan transaction, each lessee entered into a unitary, 20-year master operating lease for its branded stores. As the borrowers under the Loan also are the Landlords under the operating leases, the source of cash for the borrowers to fund these Loan payments is the rent paid by the lessees that run the stores, whose cash flow in turn is derived from in-store and online sales of the Lord & Taylor or Saks tenants' merchandise.

The tenants' rent and other obligations were absolutely and unconditionally guaranteed by HBC under the Operating Lease Guarantees, a critical credit protection for Plaintiff and a major inducement for Lender to make the Loan in the first place. Despite provisions in the governing loan documents that prevent changes to the guarantor's identity or financial capacity without Lender's express consent, Defendants engaged in various restructuring transactions that removed assets from HBC and transferred them to newly formed, foreign entities, including an entirely newly formed, offshore ultimate parent company, Defendant HBC, L.P. Defendants then apparently extinguished HBC's very existence. All of this was done by Defendants without disclosure to Plaintiff. Plaintiff was entitled to have HBC serve as guarantor, and to know and be assured that HBC's identity and financial wherewithal to satisfy the obligations under the guaranty could not be changed without Plaintiff's advance notice and informed consent. Defendants' conduct violated numerous provisions of governing loan documents and related guarantees and deprived Plaintiff of its rights to advance notice, consent, and the ability to challenge any proposed restructuring transactions before consummated.

The major factual and legal issues pertain to whether Defendants' corporate transfers were appropriate under the loan documents. Plaintiff seeks a declaratory judgment that Defendants' improper transfers violated the loan documents and are void. Defendants further seeks Defendants' transparency with respect to the current state of Plaintiff's guarantor, and the various corporate transactions that have improperly transformed it.

*Defendants' Statement*

Defendants set forth the facts relevant to this dispute in their opposition to Plaintiff's Order to Show Cause. (Dkt. No. 23.)

In short, Plaintiff attacks an internal restructuring by HBC that was completed earlier this year in connection with its highly publicized take-private transaction. Plaintiff claims that any asset transfers made by HBC in this internal restructuring violated Plaintiff's Loan Agreement with the 34 borrowers referenced above—even though Defendants are not parties to the Loan Agreement and Plaintiff has not sued its actual counterparties, and even though the Loan Agreement expressly permits the intra-family transfers that were made to HBC Bermuda. Plaintiff also claims that these asset transfers violated HBC's Operating Lease Guarantees—even though those agreements do not contain any transfer restrictions at all. As set forth in the pre-motion to dismiss letter submitted



by Defendants on June 29, Defendants respectfully submit that Plaintiff's claims are fatally defective and should be dismissed for these and other reasons.

Putting that aside, Plaintiff has no basis for the relief it seeks—*i.e.*, declaring HBC's internal restructuring void. This is not a remedy contemplated by the Loan Agreement or Operating Lease Guarantees. To the contrary, if the transfer restrictions in the Loan Agreement were violated (which they were not), then Plaintiff can assert (as it has already done on other grounds) that an Event of Default has occurred and pursue its contractually agreed remedies. Nor has Plaintiff suffered any harm here. Plaintiff now has guarantees from both HBC—which continues to exist, despite Plaintiff's continuing assertions to the contrary—and its corporate successor, HBC L.P. It is in precisely the same position as it was prior to the internal restructuring. And all of the original Collateral for the Loan remains intact.

Consistent with the Court's suggestion, Defendants have now delivered dozens of documents from the closing set for the internal restructuring as well as financial statements showing these facts to Plaintiff. Defendants have also offered multiple times to get on the phone with Plaintiff and its counsel to explain these transactions and resolve what appears to be an obvious misunderstanding of the facts. Plaintiff has not accepted this invitation and has not identified any additional documents that it says it needs to evaluate the transactions at issue. Nevertheless, and despite that it is unsupported by the facts and contrary to the agreements, Plaintiff persists with its false narrative, including in its recitation of the issues set forth above in this letter.

**(2) A brief statement by plaintiff as to the basis of subject matter jurisdiction and venue, and a brief statement by each party as to the presence or absence of subject matter jurisdiction and venue. Statements shall include citations to relevant statutes. In addition, in cases for which subject matter jurisdiction is founded on diversity of citizenship, the parties shall comply with the Court's Individual Rule 2(B)(ii).**

**Subject Matter Jurisdiction**

*Plaintiff's Statement*: The claims alleged and the relief sought herein arise under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and are brought pursuant to Federal Rules of Civil Procedure 57 and 65.

At the time of filing, Plaintiff had a good faith basis to submit that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because its diligence of publicly available information concerning the corporate and ownership structure of the newly-formed, now-private HBC entities indicated that this is a suit between a citizen of Delaware and citizens of foreign states, with an amount in controversy that exceeds $75,000.00. To confirm the Court's subject matter jurisdiction, on May 18, 2020, Plaintiff made a Local Civil Rule 26.1 Demand on Defendants, seeking jurisdictional discovery about Defendants' citizenship of diversity purposes.

Defendants failed to serve any response to that demand, which was due on May 25, 2020, and instead opposed Plaintiff's request for a preliminary injunction on the merits. Defendants never



raised with the Court or with Plaintiff that there was a lack of complete diversity prior to June 29, 2020. Defendants raised this issue for the first time in a pre-motion letter to the Court on June 29, 2020. In that letter, Defendants represented – as they do below – that there ostensibly is not complete diversity of citizenship here because one of the limited partners of one of the members of HBC GP LLC is "believe[d]" to be a citizen of Delaware.

Plaintiff has met and conferred with Defendants on this issue, and is currently seeking to confirm Defendants' representations that they "believe" there is no diversity jurisdiction.

*Defendants' Statement*: Defendants submit that Plaintiff fails to establish the Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1332. HBC L.P. is a Bermuda exempted limited partnership, which has the citizenship of each of its partners for purposes of diversity jurisdiction. HBC L.P.'s general partner is a Bermuda exempted LLC named HBC GP LLC, which is an entity organized under the Bermuda Limited Liability Company Act, 2016, which was modeled after the Delaware Limited Liability Company Act. As such, HBC GP LLC has the citizenship of each of its members. Five of HBC GP LLC's members are investment funds, themselves organized as limited partnerships, managed by Abrams Capital Management, LLC ("Abrams Capital"), a non-party to this litigation. Abrams Capital has informed Defendants that it believes that at least one of its limited partners is a citizen of Delaware. Accordingly, complete diversity is lacking here and this case should be dismissed.

Contrary to Plaintiff's suggestion, Defendants have identified this subject matter jurisdiction defect (which cannot be waived) on a timely basis in advance of the initial pretrial conference and consistent with Your Honor's Order dated May 19, 2020 and paragraph 2.B.ii of Your Honor's Individual Rules. The facts that demonstrate complete diversity is lacking are ultimately known to a non-party, Abrams Capital. Defendants have made clear that we would work together with Plaintiff and Abrams Capital to identify the relevant jurisdictional facts. For its part, Plaintiff also agreed that it made sense to do so at this early stage of the litigation.

**Venue**

*Plaintiff's Statement*: Plaintiff submits that venue in this Court is proper under 28 U.S.C. § 1391 because of the contractual and exclusive forum selection clause set forth in Section 4.1 of the Operating Lease Guarantees.

*Defendants' Statement*: Defendants do not challenge Plaintiff's assertion that venue would be proper in this Court if the Court finds that subject matter jurisdiction exists.

**(3) A brief description of any (i) motions that any party seeks or intends to file, including the principal legal and other grounds in support of and opposition to the motion, (ii) pending motions, and (iii) other applications that are expected to be made at the status conference.**



*Plaintiff's Statement:* Plaintiff does not intend to file a motion at this time, but reserves the right to file a motion for interim injunctive relief or a dispositive motion if appropriate based on discovery in the case. Plaintiff does not intend to make any applications at the status conference.

*Defendants' Statement:* Defendants plan to move to dismiss and to stay discovery during the pendency of its motion to dismiss. Defendants will also seek a protective order prohibiting the parties from using or disclosing any discovery the Parties exchange for any purpose other than litigating the instant case. Defendants reserve their rights to challenge motions brought by Plaintiff in the future.

**(4) A brief description of any discovery that has already taken place, and any discovery that is likely to be admissible under the Federal Rules of Evidence and material to proof of claims and defenses raised in the pleadings.**

*Plaintiff's Statement:* Pursuant to the Court's recommendation during the May 27, 2020 hearing, on May 29, 2020, Plaintiff's counsel requested documents pertaining to closing binder(s) for the reorganizations and financial statements for HBC ULC and HBC L.P. (Bermuda). In response, Defendants have provided certain closing documents and financial statements. Although Defendants have designated these documents as documents for settlement purposes pursuant to FRE 408, Plaintiff disagrees that the exchange of information by Defendants was done for settlement purposes. Moreover, while Defendants have delivered certain documents and offered to have discussions, the information provided by Defendants raises more questions than it answers. Indeed, in opposition to Plaintiff's preliminary injunction motion, Defendants represented to the Court and to Plaintiff that Plaintiff was in the same economic position it had been prior to the challenged transfers, given *inter alia* the purported billions of dollars of assets on the HBC L.P. (Bermuda) balance sheet. The Court recognized Plaintiff's point that glaringly omitted was any representation about the liabilities or net liquidity, thus the Court's encouragement to Defendants to voluntarily produce documents to rebuild trust with the Lender. One of the first such documents produced by Defendants reveals that HBC L.P. (Bermuda) is, as Plaintiff feared, now balance sheet insolvent. The Plaintiff continues to work through the information provided along with the parallel issues arising from the continued loan default (ongoing since April 1, because Defendants have not honored the obligations under the Operating Lease Guaranty), and acceleration of the Loan, and flatly rejects any suggestion that its claims are not meritorious.

Prior to the July 8 conference, Plaintiff intends to serve its First Set of Requests for Production of Documents of Defendants. Plaintiff also reserves its right to serve interrogatories, requests for admissions, and deposition notices on Defendants. Based on current information, Plaintiff intends to seek the following discovery that is likely to be admissible under the Federal Rules of Evidence and material to the claims and defenses: (1) the closing binder(s) for the corporate reorganizations; (2) financial statements for HBC ULC and HBC Bermuda; (3) the structure and documentation of the restructuring transactions; (4) the contracts, agreements, instruments or other legal documents effecting the restructuring transactions; (5) the sources and uses of all cash and non-cash consideration associated with the payment and cancellation of HBC shares in connection with the restructuring transactions; (6) the transfers or assignments or assumptions of assets or liabilities to



and within HBC Bermuda; (7) valuations and analyses of the net worth, assets, liabilities and liquidity of Defendants and HBS Global Properties; (8) the identity of the members (including sub-partners or sub-members) and shareholders of Hudson ULC, including ownership percentage; (9) the identity of the partners (including sub-partners or sub-members) and equity investors of HBC Bermuda, including their ownership percentage; and (10) the involvement, if any, of the Abu Dhabi Investment Council ("ADIC") in the Restructuring Transactions.

*Defendants' Statement:* Defendants do not believe that discovery should proceed while their motion to dismiss is pending.

For the avoidance of doubt, Defendants do not agree with the Plaintiff's summary of the documents that were supplied to Plaintiff on a voluntary basis. Indeed, everything included in the first paragraph above in and after the sentence that says "the information provided by Defendants raises more questions than it answers" was newly added to this joint letter for the first time at 3:41 p.m. this afternoon. Defendants have also made repeated offers to discuss these matters with Plaintiff to answer any questions they may have. Plaintiff has chosen not to engage with Defendants and did not raise these "questions" with Defendants before referring to them generally in this letter despite the passage of several weeks since this information was delivered. It also appears that Plaintiff has misinterpreted the information it has been provided, and Defendants again reiterate their offer to discuss these matters over the phone.

**(5) A computation of each category of damages claimed, see Fed. R. Civ. P. 26(a)(1)(A)(iii).**

Plaintiff does not seek any monetary damages in this action. Plaintiff seeks a declaratory judgment and equitable relief related to Defendants' actions.

**(6) A statement describing the status of any settlement discussions and whether the parties would like a settlement conference.**

The parties have not engaged in any settlement discussions.

*Plaintiff's Statement*: Plaintiff is not currently amenable to engaging in a settlement conference and has not agreed at this time to any ADR mechanism to be employed at a specific point in the case.

*Defendants' Statement:* Defendants have provided Plaintiff with requested information on a voluntary basis in the hopes of resolving Plaintiff's meritless claims amicably.



**(7) Any other information the parties believe may assist the Court in resolving the action.**

The parties have no further information to add at this time. The parties thank the Court for its attention to this matter and look forward to discussing the above at the Court's scheduled conference on July 8, 2020.

Dated: July 1, 2020

| | |
|---|---|
| By: */s/ Michael T.G. Long*<br><br>Michael T.G. Long<br>Sheila A. Sadighi<br>Lowenstein Sandler LLP<br>1251 Avenue of the Americas<br>New York, New York 10020<br>Tel. 212.262.6700<br>mlong@lowenstein.com<br>ssadighi@lowenstein.com<br><br>and<br><br>Craig A. Welin<br>Frandzel Robins Bloom & Csato, L.C.<br>1000 Wilshire Boulevard, 19th Floor<br>Los Angeles, CA 90017-2427<br>Tel. (323) 852-1000<br>cwelin@frandzel.com<br><br>*Counsel for Plaintiff* | By: */s/ Tariq Mundiya*<br><br>Tariq Mundiya<br>Jeffrey B. Korn<br>Randall W. Jackson<br>Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, New York 10019<br>(212) 728-8000<br>tmundiya@willkie.com<br>jkorn@willkie.com<br>rjackson@willkie.com<br><br>*Counsel for Defendants* |

